IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DELUXE MEDIA SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 06 C 1666 |
| | ) | |
| DIRECT DISC NETWORK, INC., | ) | |
| LANCE H. ROBBINS, and HARRY | ) | |
| FEINGOLD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deluxe Media Services, LLC, filed suit in this court against Lance H. Robbins and Harry Feingold, in their individual capacity as officers, and against their company, Direct Disc Network, Inc. ("DDN"), for breach of contract, fraud, and declaratory judgment. Defendants Robbins and Feingold (hereinafter "defendants")[1] filed a motion to dismiss plaintiff's fraud claim on July 10, 2006. For the following reasons, that motion is granted in part and denied in part.

## BACKGROUND

As defendants filed this motion to dismiss under Fed. R. Civ. Pro. 12(b)(6), we generally take the allegations in plaintiff's complaint as true. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). Plaintiff has, however, attached two exhibits to the complaint, a copy of the contract between Deluxe and DDN, and a copy of DDN's business plan. An exhibit attached to a

---

[1] Defendant Direct Disc did not retain counsel, which puzzled this court at a status hearing on June 28, 2006, given that Robbins and Feingold, the purported CEO and CFO, had retained counsel for themselves as individuals. Plaintiff subsequently filed a motion for default judgment against Direct Disc on August 8, 2006 (docket no. 33), which was granted on August 30, 2006 (docket no. 44). Thus, Direct Disc is no longer a defendant to this action.

pleading becomes part of that pleading for all intents and purposes. Fed. R. Civ. Pro. 10(c). Therefore, the following facts are generally drawn from plaintiff's complaint and exhibits.

Direct Disc Network, Inc. purported to be a California corporation, and defendants Robbins and Feingold purported to be DDN's CEO and CFO, respectively.[2] DDN was involved in the sale of advertisements and promotions on CDs of demographically selectable events, including live performances, theme parks, and automotive and sporting events. Deluxe Media, LLC, is a Delaware company, with its principal place of business in Illinois. Deluxe was in the business of replicating CD and CD-ROM discs.

On April 15, 2005, two representatives from Deluxe participated in a meeting with defendant Feingold to discuss a possible exclusive contract for Deluxe's services. At that meeting, and in subsequent conference calls in April and May 2005, Deluxe was told by both Robbins and Feingold that (1) DDN was a viable corporate entity, incorporated under the laws of California; (2) DDN had viable business relationships with both Universal Studios and Clear Channel to distribute an extensive supply of event discs; (3) DDN, through the personal contacts of Robbins and Feingold, had established viable business opportunities with the National Hockey League, NASCAR, the Trump Hotels, Busch Gardens, Paramount Pictures, and other major companies; and (4) DDN would be invoiced and would provide payment to Deluxe based on the number of units manufactured by Deluxe, and DDN's payment would not be contingent on or limited by any other factor(s).

DDN also provided Deluxe with executed copies of DDN's customer distribution contracts with Universal Studios, and with a copy of DDN's business plan. Plaintiff alleges, upon information and belief, that the business plan was prepared in substantial part, and

---

[2] Deluxe alleges that Robbins and Feingold are the "alter egos" of DDN.

approved in its entirety, by Robbins and Feingold. The business plan contained certain representations including but not limited to:

> (1)The Profit and Loss Statement in DDN's business plan reflects revenues of $28,800,000 during the first year of operation with a pre-tax profit of $10,805,000; (2) DDN's business plan reflects the payment of manufacturing costs to Deluxe in the amount of $4,500,000 in the first year of operation; (3) DDN's business plan reflected positive cash flow of $9,911,000 in year one, $23,303,000 in year two, $47,366,000 in year three; and (4) DDN was a viable corporate entity incorporated under the laws of California.

The business plan also included two relevant provisions not referred to in plaintiff's complaint: a safe harbor provision and a risk section. The safe harbor provision stated in pertinent part:

> The forward-looking statements, estimates and projections contained herein have been prepared by the management of the Company in good faith and on a basis believed reasonable; such estimates and projections involve significant elements of subjective judgment and analysis and no representation can be made as to their attainability. Moreover, the information included in this Summary has been prepared based upon the ability of the Company to obtain funding for operations. Such forward-looking statements must be viewed in light of this and other assumptions set forth herein. No representation or warranty, express or implied, is made as to the accuracy or completeness of such information and nothing contained in this Summary is, or shall be relied upon as, a promise or representation as to the past or the future.

The safe harbor provision then invited the recipient of the business plan to ask questions of DDN to verify the accuracy of the statements in the plan, and stated that it expected recipients of the information to conduct a due diligence investigation.

The risk section addressed a number of factors that could affect DDN's viability including that (1) DDN did not currently have sufficient revenues to support its business activities and that in attempting to raise additional capital it may find that capital unavailable for reasons of financing or terms; (2) failure to secure capital may result in limiting, delaying, or scaling back activities or future operations; (3) DDN may not be successful in establishing

necessary strategic alliances because of the lack of control over those operations and the possibility that in the future the alliances will not develop or will market products in competition with DDN; and (4) the presence of competition which could produce products more rapidly or less expensively, and the rapid changes in technology, making DDN's product obsolete.

On May 26, 2005, DDN and Deluxe entered into a Preferred Provider Services Agreement (the "contract"), where Deluxe would be the exclusive manufacturer of CDs and CD-ROMs for DDN's needs. The contract was between Deluxe Media Services, LLC, and Direct Disc Network, Inc. Included in the contract was a provision for inducement payments, which operated as follows:

> Deluxe will make an Inducement Payment to DDN in the amount of One Million ($1,000,000), payable as follows: (I) Four Hundred Thousand ($400,000), via wire transfer to DDN bank account as set forth herein, following the full execution of the Agreement by the parties, but in no event later than May 28, 2005; (ii) Four Hundred Thousand ($400,000) no later than fifteen days (15) following the date Five Million (5,000,000) units are ordered by DDN; and (iii) subject expressly to Section 5 (b) below: and [sic] final Two Hundred Thousand ($200,000) to be paid by no later than fifteen (15) days following the date an additional Five Million (5,000,000) units are ordered by DDN.

Section 5(b) stated that in the event DDN failed to order 10,000,000 units by the end of two years, Deluxe was not obligated to make the final inducement payment.

There was an additional clause in the contract, not mentioned in plaintiff's complaint, which is relevant to this motion. It stated:

> 14.4   Entire Agreement. This Agreement constitutes the entire agreement between the parties and supersedes and replaces all prior written or oral agreements and understandings, if any, between the parties relating to the subject matter hereof. There are no warranties, representations or agreements between the parties in connection with the subject matter of this Agreement except as specifically set forth or referred to in this Agreement.

The agreement was signed by a representative of Deluxe and by Robbins.

Pursuant to the agreement, in July and September 2005, DDN transmitted purchase orders to Deluxe for the manufacture and shipment of a total of 4,500,000 discs at a price of $1,605,100. Between July and November 2005, Deluxe manufactured and shipped these discs to DDN's customer, Universal Studios, at both its Hollywood and Orlando locations, and invoiced DDN in the amount of $1,605,100. Over 1,800,000 discs manufactured and shipped were refused by Universal Studios contrary to the agreement, causing Deluxe to incur additional storage and transportation costs. Deluxe has paid DDN $800,000 in inducement payments under the agreement, which DDN has retained.[3]

Plaintiff filed a complaint in this court on May 22, 2006. Among other things, plaintiff claims fraud by DDN, Robbins and Feingold in that, for the sole purpose of securing Deluxe's agreement to make the inducement payments, Robbins and Feingold misrepresented numerous material facts. Plaintiff claims that Robbins and Feingold held DDN out to be a viable California corporation in the contract itself and in the business plan, when, on information and belief, it was not incorporated at all, let alone in the state of California. Plaintiff claims that it was led into the contract and into making the inducement payments by this misrepresentation, and defendants' misleading statements both orally and in the business plan regarding its ability to raise capital, its financial position and viability, its established business relationships and established viable business opportunities. Plaintiff claims that it entered into the contract based on all of these representations, and that, as a result, it has sustained substantial damages.

---

[3]In addition to the first inducement payment of $400,000, due after the signing of the contract, Deluxe has made the second inducement payment of $400,000, despite the fact that DDN had not yet ordered the requisite 5,000,000 units.

Defendants filed a motion to dismiss on July 7, 2006, claiming that plaintiff failed to plead fraud adequately, as required by Fed. R. Civ. Pro. 9(b), and claiming that Robbins and Feingold cannot be held personally liable for actions of the company, both because of their status as directors of DDN and because of the safe harbor provision and the merger clause in the business plan and the contract, respectively.

## ANALYSIS

Both parties agree that Illinois law applies to this action pursuant to a choice-of-law clause in the contract. On a motion to dismiss, the well-pleaded allegations of the complaint must be accepted as true. Hishon, 467 U.S. at 73; McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006). We must draw all reasonable inferences in favor of plaintiff. McMillan, 455 F.3d at 758. Dismissal is only proper when it appears beyond doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); McCready v. eBay, Inc., 453 F.3d 882, 888 (7th Cir. 2006). However, a copy of any written instrument that is an exhibit to a complaint is considered to be a part of the pleadings (Fed.R.Civ.P. 10(c)), and as a general principle, when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations. Graue Mill Dev. Corp. v. Colonial Bank & Trust Co., 927 F.2d 988, 991 (7th Cir. 1999). Keeping these principles in mind, we turn to the facts before us.

We quickly dispose of defendants' contention that they cannot be held personally liable as officers of a corporation. First, plaintiff has alleged that DDN is, in fact, not a corporation. Thus, based on this allegation, Robbins and Feingold could not use DDN, Inc. as a shield to

personal liability.[4] *See* Tin Cup Pass Ltd. Partnership v. Daniels, 195 Ill. App. 3d 847, 850 (Ill. App. Ct. 1990)(individual who conducts affairs of business in name of non-existent corporation is personally liable in a contract made in connection with the business); Loveridge v. Dreagoux, 678 F.2d 870, 878 (10th Cir. 1982)(defendants who presume to act for non-existent corporation are held personally liable on the obligation). Even if we were to find that DDN, Inc. existed at this point, which we do not, the case law is clear that the corporate veil may be pierced when the allegation is fraud, specifically when the officers being charged were alleged to be personally involved in the fraudulent acts, as alleged here. *See* Madiga v. Tang, 346 Ill. App. 3d 277, 284, 805 N.E.2d 243, 250 (Ill. App. Ct. 2004).

We next address defendants' contention that plaintiff's claim of fraud has not been adequately pled. Rule 9(b) requires that allegations of fraud be pled with particularity. This requires the plaintiff to plead the who, what, when and where of the alleged fraud. Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins., 412 F.3d 745, 749 (7th Cir. 2005). However, the particularity requirement of Rule 9(b) must be read together with the liberal notice pleading standard of Rule 8. Tomera v. Galt, 511 F.2d 504 (7th Cir. 1975). Thus, Rule 9(b) does not require that the complaint explain plaintiff's theory of the case, but that it alleges the date and content of the misrepresentation that plaintiff claims was fraudulent. Midwest Commerce Banking Co. v. Elkhart City Ctr., 4 F.3d 521 (7th Cir. 1993).

Defendants argue that plaintiff's claims cannot stand because it has pled certain

---

[4] Defendants point out to this court, in their motion to dismiss, that DDN is, in fact, a Nevada LLC, and was mistakenly referred to as a California corporation in certain documents. This is a bit disingenuous because the background behind DDN's purported incorporation is found in the business plan, and because the contract was signed by Feingold on behalf of DDN, Inc.. Regardless, while both parties argue the materiality of this distinction in their briefs, DDN's actual status as a company does not appear anywhere in plaintiff's complaint. As we must take the allegations in the complaint as true on this motion, this factual argument must await a motion for summary judgment.

allegations on information and belief. We disagree. Rule 9(b)'s particularity requirement must be relaxed where necessary information is in the hands of the defendants. Corley v. Rosewood Care Ctr. Inc., 142 F.3d 1041 (7th Cir. 1998). Here, the two claims plaintiff has plead on information and belief both relate to information squarely in the hands of defendants and not readily accessible to the plaintiff.

Next, defendants take issue with the sufficiency of plaintiff's allegations regarding the elements of fraud. In Illinois, the elements of fraud are (1) misrepresentation of a material fact; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages. Gerill v. Jack L. Hargrove Builders, 128 Ill.2d 179, 538 N.E.2d 530, 536 (Ill. 1989). Defendants argue that plaintiff has failed to adequately plead elements (1) and (4), and that its allegations rest on projections of future performance, rather than past or present fact. Defendants also argue that even if plaintiff has adequately plead these elements, the "merger clause" in the contract, and the safe harbor provision in the business plan, trump these allegations.

First, defendants argue that plaintiff's claim is not actionable because it is based on projections of future performance, as opposed to statements of past or present fact. For instance, plaintiff claims that defendants committed fraud by misrepresenting, both orally and in the business plan, DDN's first year revenues, profits for the first three years of operation, its ability to raise capital, and how much Deluxe, as manufacturer, would be paid in the first year of operation. As DDN had not been in operation for a year, all of the financial statements were projections of DDN's future performance. Further, the existence of viable business opportunities is also a projection of the future, as those opportunities do not always materialize into established business relationships. Defendants are correct that such projections are

generally not actionable under Illinois law. <u>Continental Bank, N.A. v. Meyer</u>, 10 F.3d 1293, 1298-99 (7th Cir.1993)(collecting cases).

However, in the safe harbor provision of the business plan, defendants represented that the forward-looking statements were "prepared by the management of the Company in good faith and on a basis believed to be reasonable." Thus, regardless of the fact that future projections are inherently unpredictable and generally cannot for the basis of a fraud claim, we find that if plaintiff can prove that defendants made such projections in bad faith and on unreasonable bases and that plaintiff relied upon those future predictions as matters of fact based on their being made in good faith, plaintiff may sustain a claim for fraud. Additionally, what may have been a good faith or reasonable basis at the time the business plan was put together, may no longer have any reasonable basis at the time the business plan was given to plaintiff, at the time the oral representations were made, at the time the contract was made, or at the time the order for CDs were placed that later could not be paid for. We are unsure from plaintiff's complaint what the specific time frame is that we are dealing with regarding defendants' good faith and reasonableness. As plaintiff's characterization of the oral and written statements and plaintiff's reliance on these statements are matters of fact, we are unable to determine them on this motion. *See* <u>West v. Western Cas. & Sur. Co.</u>, 846 F.2d 387, 393 (7th Cir. 1988)("A statement that, standing alone, appears to be a statement of opinion, nevertheless may be a statement of fact when considered in context. Courts focus on the circumstances surrounding the representation to determine whether the plaintiff may have justifiably relied on the opinion as though it were a statement of fact.") We hold that plaintiff's fraud claim is not precluded by the safe harbor provision in the business plan, nor by the nature of defendants' misrepresentations.

Plaintiff has also alleged that defendants misrepresented a number of present and past facts, including DDN's status as a viable California corporation, its established business relationships with Universal Studios and Clear Channel, and the existence of viable business opportunities with various companies. Defendants argue that all of these statements, past, present and future, are not actionable because the "merger/no-reliance" clause in the contract precludes these allegations.

Looking to the contract, defendants characterize the "entire agreement" clause referred to above, both as a "merger" or "integration" clause and as a "no-reliance" clause. A merger clause generally states that a contract represents the entire agreement between the parties. When a contract dispute arises and one party seeks to admit representations of negotiations which are not embodied in the contract, the parol evidence rule bars that evidence from being considered by the court. Vigortone Ag Prods. v. AG Prods., 316 F.3d 641, 644 (7th Cir. 2002). However, the parol evidence rule is one that sounds in contract only. *Id.* Courts have consistently stated that the parol evidence rule will not bar fraudulent misrepresentations which induce a party to contract, regardless of the existence of a merger clause. *Id.* (noting that a majority of courts hold that the parol evidence rule does not bar fraud claims); *see also* W.W. Vincent & Co. v. First Colony Life Ins. Co., 351 Ill. App. 3d 752, 814 N.E.2d 960, 968 (Ill. App. Ct. 2004); Astor Chauffeured Limousine v. Runnfeldt Inv., 910 F.2d 1540, 1546 (7th Cir. 1990); Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc., 2005 U.S. Dist LEXIS 30260, *20-21 (N.D. Ill. Nov. 29, 2005). As this court has put it, "[t]o hold that an integration clause in a fraudulently induced contract precludes a fraud-based challenge to the contract is illogical and would also provide a blueprint for defrauding parties to shield their wrongdoing." Am. Hardware, 2005 U.S. Dist. LEXIS at *32.

If the clause is characterized as a no-reliance clause, or a combination of a merger clause and a no-reliance clause, the analysis changes. A no-reliance clause is one that states that the parties explicitly have not relied on any earlier or outside representations other than the ones in the contract. In Rissman v. Rissman, 213 F.3d 381 (7th Cir. 2000), the Seventh Circuit addressed the effect of a no-reliance clause on a fraud claim based on outside representations in the context of a securities transaction under federal law. The court held that in accordance with decisions of other circuits, (One-O-One Enterprises, Inc. v. Caruso, 848 F.2d 1283 (D.C. Cir. 1988); Jackvony v. RIHT Financial Corp., 873 F.2d 411 (1st Cir. 1989)), the no-reliance clause prevented the plaintiff from succeeding on the fraud claim because it barred the admission of any representation not included in the contract itself. *Id.* at 383. Judge Rovner concurred, but stated that this holding did not mean that any time a no-reliance clause was placed in a contract, no allegation for fraud would be sustainable. *Id.* at 387-88. She explained that the cases the Seventh Circuit looked to in deciding this case had all weighed the no-reliance clause as one factor, albeit a very convincing one, of a number of other factors necessary to determine whether reliance was justified. *Id.* Thus, she stated, the presence of the no-reliance clause alone was not determinative, but would be sufficient in the majority of cases. *Id.*

Some courts have interpreted this holding to mean that the presence of a no-reliance clause is determinative, citing Rissman and Vigortone Ag Products Inc. v. AG Products Inc., 316 F.3d 641 (7th Cir. 2002). In Vigortone, the Seventh Circuit stated, *in dicta*, that "[o]ne consequence of the rule [that the parol evidence rule will not bar fraud claims based on external misrepresentations by the insertion of merger clauses] is that parties to contracts who do want to head off the possibility of a fraud suit will sometimes insert a 'no-reliance' clause

into their contract...." *Id.* at 644. The court further elaborated that "[s]ince reliance is an element of fraud, the clause, if upheld – and why should it not be upheld, at least when the contract is between sophisticated commercial enterprises – precludes a fraud suit...." *Id.* However, the court found the clause at issue to be an integration clause, rather than a no-reliance clause, and thus did not analyze it under Rissman. *Id.*

Other courts have followed the concurrence in Rissman, looking to the context in which that case was decided, and the context in which the cases Rissman relied on were decided. *See* Reis Robotics USA, Inc. v. Concept Industries, Inc., 462 F. Supp. 2d 897 (N.D. Ill. Nov. 6, 2006); Am. Hardware Mfrs. Ass'n. v. Reed Elsevier, Inc., 2004 U.S. Dist. LEXIS 28007 (N.D. Ill. Dec. 28, 2004); Sequel Capital, LLC v. Rothman, 2003 U.S. Dist. LEXIS 20967 (N.D. Ill. Nov. 20, 2003); Hartmarx Corp. v. JBA Int'l, Inc., 2002 U.S. Dist. LEXIS 4294 (N.D. Ill. Mar. 15, 2002). These courts find that Rissman only applies where the alleged misrepresentation in question contradicts a term of the contract. Where the contract is silent as to the alleged misrepresentation, these courts hold that the no-reliance clause is not a bar to a fraud claim based on those representations.

For example, an alleged "no-reliance" clause was analyzed in Sequel Capital v. Rothman, 2003 U.S. Dist. LEXIS 29067 (N.D. Ill. Nov. 20, 2003). That clause stated, in full, that the agreement "embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings between the parties hereto relating to the subject matter hereof, except for the Employment Agreement which shall remain in full force and effect." In Sequel, despite the plaintiff's argument that this was merely an integration clause, the court found that it was indeed a non-reliance clause because it resembled the clauses referred to in Jackvony and One-O-One. The court then found that

Rissman didn't apply, as the misrepresentations did not contradict the written contract. For this conclusion, the court relied on Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp., 910 F.2d 1540 (7th Cir. 1990). However, the decision in Astor was not made merely on the fact that the contract was silent as to the alleged previous misrepresentations, but also that the clause was an integration clause and no statement was made in it as to reliance. This distinction was noted in Rissman, where the court distinguished Astor as, there, "the parties [had not] included a no-reliance warranty in their written agreement." Additionally, the court in Astor specifically distinguished the clause at issue from the ones in Jackvony and One-O-One, as those clauses "recited that the buyer had performed its own investigation and was not relying on any representations other than those on paper." The court in Sequel conceded the narrowness of its clause in a footnote, noting that the clause in Rissman was much broader in that it specifically precluded any reliance on any representation of the parties not contained in the contract.

A similar clause was analyzed by this court in American Hardware, 2004 U.S. Dist. LEXIS at *20. That clause stated: "This Agreement and the exhibits attached hereto embody the entire agreement and understanding of the parties with respect to the transaction contemplated hereby and supersede all prior or contemporaneous written or oral commitment, arrangements or understandings with respect hereto." *Id.* There, defendant argued that the clause was a no-reliance clause. We distinguished it from the one in Rissman, noting that the clause at hand did not mention reliance. *Id.* However, because it could have arguably been construed a no-reliance clause due to its similarity to those in Jackvony and One-O-One, we proceeded to analyze it as such, noting Sequel's hesitation to apply Rissman when the alleged misrepresentations do not contradict contract terms. *Id.*

One of the hurdles of determining the status of the clause at issue is that, as seen above, the debate is mainly taking place in federal courts, which are attempting to anticipate what the Illinois Supreme Court would do. Prior to the Seventh Circuit's decision in Rissman, the prevailing Illinois case was Adler v. William Blair & Co., 271 Ill. App. 3d 117 In that case, plaintiffs had signed a subscription agreement which contained a specific no-reliance clause stating "I have received and read the [private placement memorandum] and am hereby applying for the purchase of Units solely in reliance upon the information contained in the [memorandum] and not in reliance upon any other information." *Id.* at 122. The court found this to be sufficient to bar plaintiff's claim for fraud based on oral misrepresentations. In the seven years since Rissman, only two Illinois Appellate courts have taken up the subject. One, Tirapelli, 351 Ill. App. 3d 450, also dealt with a very specific no-reliance clause which stated that the parties had "evaluat[ed] the suitability of an investment" and "relied solely upon the materials made available" to them and upon "an independent investigation" made by them. *Id.* at 453. The Tirapelli court held that Adler and Rissman controlled and that the no-reliance clause barred plaintiff's fraudulent inducement claim based on outside oral misrepresentations. The other case is Bauer v. Giannis, 359 Ill. App. 3d 897 (Ill. App. Ct. 2005). There, the defendant claimed that an "as-is" clause within a real estate contract precluded the plaintiff from relying on outside representations, including a set of disclosures defendant was required to supply by the Act (and in which defendant falsely claimed it knew of no previous flood in the house). The court held that plaintiff's fraud claim could stand, as the "as-is" clause could not supercede plaintiff's reliance on a written document which was required by the Act specifically so that it could be relied upon.

Without the benefit of knowing what the Illinois Supreme Court would do in this

instance, and attempting to fit our case in the framework already delineated, we find this clause to be much closer to that of Sequel and American Hardware than to that of Rissman, Adler, or Tirapelli. In Rissman, the party suing had specifically represented in the contract that he had not relied on any oral statements. The clause there stated: "The parties further declare that they have not relied upon any representation of any party hereby released..." 213 F.3d at 383. The clauses at issue in Adler and Tirapelli are similarly explicit. Here, the portion of the clause defendants claim to be "no-reliance" only states that there are no warranties, representations or agreements between the parties except as set forth in the agreement. Unlike the clauses of Rissman, Adler, and Tirapelli, the parties here never explicitly stated that they had conducted an outside investigation and were not relying on any outside representations. We do not find the inexplicit language in the clause at issue rises to the level of a Rissman-like no-reliance clause. Therefore, we find that the clause in the contract does not bar plaintiff's claim for fraud based on alleged misrepresentations both orally and in the business plan.

However, this does not end our analysis. Plaintiff has alleged that defendants misrepresented DDN's status as a California corporation. Regardless of the status of the purported no-reliance clause, we find this misrepresentation is actionable as that clause specifically does not reach misrepresentations inside the contract itself. *See* Bauer v. Giannis, 359 Ill. App. 3d 897, 904, 834 N.E.2d 952, 959 (Ill. App. Ct. 2005); Rissman, 213 F.3d at 383 (purpose of no-reliance clause to ensure transaction and subsequent litigation based on parties' writings). Defendants argue that plaintiff has failed to allege how the fact that DDN is not a California corporation is a material misrepresentation, as it has not alleged how its conduct would have changed had it known. Defendants' argument is unavailing. Materiality is generally an issue of fact, and thus, on a motion to dismiss, it can be generally inferred.

Woodard v. American Family Mut. Ins. Co., 950 F. Supp. 1382, 1388-89 (N.D. Ill. 1997). Furthermore, we can think of many scenarios where a party to a contract may change its position upon the revelation that the party it is contracting with is holding itself out to be a corporation, when it is not. As long as there is at least one set of facts upon which plaintiff might prevail, we cannot dismiss the claim at this stage.

We respond similarly to defendants' argument that plaintiff has not alleged the falsity of the claimed relationships with Universal Studios and Clear Channel. Plaintiff has alleged that this statement is one of the misrepresentations made by defendants' and, from that, we can infer at this point that plaintiff is alleging that statement was false. Defendants argue that the presence of letters of intent from both Universal Studios and Clear Channel in the business plan attached to plaintiff's complaint trump plaintiff's allegation of misrepresentation. We cannot say so at this time, for the reasons articulated above regarding the time frame of which plaintiff is complaining. Whether those letters were still in effect at the time plaintiff contracted with defendants is an issue that we are unable to determine on this motion, as those facts are not in front of us.

## CONCLUSION

For the foregoing reasons, we grant defendants' motion to dismiss to the extent that plaintiff's allegations rely on projections of future performance and misrepresentations outside of the contract, and deny it to the extent that plaintiff's allegations rely on misrepresentations inside the contract.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 2, 2007.