IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RANK DMS, LLC, )
)
        Plaintiff, )
)
vs. ) No. 06 C 1666
)
DIRECT DISC NETWORK, INC., )
LANCE H. ROBBINS, and HARRY )
FEINGOLD, )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Rank DMS, LLC moves for an entry of judgment against defendant Lance Robbins. Robbins, in turn, moves for vacation of the entry of default against him. For the following reasons we deny Robbins' motion and enter default judgment against him.

## BACKGROUND

On March 27, 2006, Rank filed a three-count complaint against Robbins and two other defendants, Harry Feingold and Direct Disc Network ("DDN"), a corporation of which Robbins was the CEO and Feingold was the COO. The complaint alleged breach of contract and declaratory judgment claims against DDN, and a fraud claim against DDN and Robbins. All defendants originally appeared represented by counsel. Rank filed its first amended complaint on May 22, 2006. Feingold and Robbins filed a motion to dismiss that complaint on July 10, 2006. DDN was not a party to that motion. On August 8, 2006, Rank filed a motion for default judgment against DDN, which was granted on August 30, 2006. On March 2, 2007, this court granted in part and denied in part defendants' motion to dismiss. Deluxe Media Servs., LLC v. Direct Disc Network, Inc., 2007 U.S. Dist. LEXIS 15618 (N.D. Ill. 2007). Feingold and Robbins answered the complaint on March 20, 2007. On May 17, 2007, counsel

for Robbins was granted leave to withdraw representation. Robbins proceeded *pro se* thereafter.[1]

The court set discovery deadlines, including a July 19, 2007, deadline for serving written discovery, and an October 5, 2007, deadline for serving requests to admit. On July 6, 2007, Rank served Robbins with interrogatories and requests for production of documents. On August 24, 2007, Rank served Robbins with requests to admit. At a status hearing on July 12, 2007, the parties agreed that the deadline for serving written discovery was extended to August 2, 2007. Robbins also informed the court that he was interested in attempting settlement, and the court directed him to provide financial information to Rank to aid in the discussions. Rank's counsel also asked Robbins to send a written settlement offer for consideration by her client. On August 17, 2007, receiving no response by Robbins to Rank's interrogatories or requests for production, Rank wrote to Robbins indicating it would file a motion to compel if no responses were received. In response to that letter, Robbins asked of, and received from, Rank, an extension until September 15, 2007, to respond to discovery.

On August 23, 2007, Rank was granted leave to file a second amended complaint, adding a second count against Robbins for breach of contract (the "complaint"). Robbins' answer was due on or about September 12, 2007. At a status conference held on September 12 – where Robbins did not appear – the court, *sua sponte*, granted Robbins an extension to answer or otherwise plead to on or before October 3, 2007. On September 13, 2007, Rank's counsel e.mailed Robbins requesting the financial information needed to permit evaluation of a potential settlement offer. Robbins agreed to provide that information.

At a status hearing on October 10, 2007 (where Robbins was again not present), Rank

---

[1] On September 27, 2007, Rank voluntarily dismissed claims against Feingold pursuant to Federal Rule of Civil Procedure 41(a)(1).

informed this court that Robbins had not answered the second amended complaint, and had not responded to Rank's interrogatories, requests for production of documents, or requests for admission. Rank's counsel further stated that it never received any of the financial information that Robbins had agreed to provide in September. Rank moved, orally, for an entry of default against Robbins, which was granted. A prove-up hearing was set for November 7, 2007, and later reset to November 13, 2007. On October 31, 2007, Rank filed a motion for entry of judgment against Robbins, including damages information necessary for the prove-up hearing.

On the date of the prove-up hearing, Robbins filed a motion to set aside the default that he had tendered earlier to opposing counsel, since Rank, on the same date, filed an opposition to Robbins' motion. In the affidavit filed with his motion, Robbins cited his *pro se* status and family medical issues as the reasons for his failure to comply with the court's deadlines. The court entered and continued Robbins' motion and directed him to respond to outstanding discovery and answer Rank's complaint on or before December 18, 2007.

On December 17, 2007, Robbins faxed his responses and objections to Rank's request for admissions to Rank's counsel, along with financial documentation. He did not respond to Rank's interrogatories or requests for production, and did not at that time file an answer to the complaint. At the status hearing on December 18, 2007, Rank informed the court of Robbins' deficiencies. The court again gave Robbins' an extension to January 2, 2008, to file his responsive pleading and provide his discovery responses. The court also advised the parties to discuss the deficiencies in Robbins' responses to the requests for admission. On December 19, 2007, Rank's counsel wrote to Robbins detailing the problems and requesting amended responses by December 30, 2007. Rank also detailed problems with Robbins' financial information and requested from Robbins additional information and a settlement

offer. Robbins responded by e.mail the same day, offering to send any additional financial information needed, and stating that he would not provide amended responses because he believed "a certain amount of leeway will be granted by the judge in terms of the form and particularity of my responses as I am without counsel." (Rank's Additional Opposition to Robbins' Motion, Exhibit B). He also stated several reasons why he believed there was no fraud on his part, and said that because there has been no fraud "that is what [sic] the whole purpose of continuing the discovery process on my part is all about. [I]f you wpuld [sic] like to consider dropping the fraud allegation, I would not be as compelled both morally and ethically to contunue [sic] drawing this out." (*Id.*)

On December 29, 2007, Robbins sent a letter to Rank agreeing to amend his responses to the requests for admissions, and stating that his answer, and other discovery responses, were forthcoming. He again stated that he "would be willing to forgo further discovery and motions that can and will be made in this case" if Rank agreed to drop the fraud allegation. He included additional financial documents requested by Rank. On December 31, 2007, Robbins sent a fax to Rank consisting of eight pages, allegedly containing his responses to interrogatories. However, that document was missing several pages. Rank's counsel informed Robbins of that fact and he re-faxed the responses, which again were incomplete. At a status hearing on January 2, 2008, Rank informed the court of Robbins' failure to provide proper responses to discovery and his failure to answer the complaint. The court again continued the matter to February 12, 2008.

On January 11, 2008, Rank again informed Robbins, by letter, of the fact that it had still not received proper responses to its requests for admissions, or a complete copy of responses to requests for production. Furthermore, Rank informed Robbins that he had not filed an answer to the complaint, nor had Rank received answers to its interrogatories. On

February 6, 2008, Robbins filed his answer to the complaint and provided a complete signed copy of his responses to requests for production. Robbins' answer, however, appeared to be simply a copy of his earlier answer to the first amended complaint, as it did not address the newly added count against him for breach of contract. Robbins amended his answer to include the new count, and a copy was received by Rank and this court the day before the February 12, 2008, status date.

On February 8, 2008, Rank filed a renewed motion for judgment against Robbins. Between that date and the February 12, 2008, status hearing, Rank received a number of discovery responses from Robbins. In light of these additional responses, the court directed Rank to supplement its motion for judgment by February 19, 2008, and directed Robbins to respond by February 26, 2008. Rank filed its supplement on February 19, 2008, as directed, noting that the majority of Robbins' discovery responses were in fact non-responsive. For example, Rank noted that Robbins' answer to almost all of its requests for production was that "Defendant will produce copies of all non-priviledged [sic], responsive documents in its possession, custody or control that it has identified through a reasonable and diligent search." However, as Rank noted, Robbins has had these requests for production for over seven months, and discovery has been closed for months. Robbins further objected to a request to produce documents referred to in his Rule 26 disclosures as being "overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible material." Similarly, Robbins' responses and objections to Rank's interrogatories contain repeated statements that information will be provided "in the further course of discovery" or "is being researched by Robbins and will be provided to plaintiffs" even though discovery was already closed. Rank further pointed to other responses that were left unanswered because of improper objections by Robbins. Rank argued that Robbins did not have good cause for the

default and the content of his answer and responses to the request for admissions demonstrate that he has no meritorious defense to Rank's claims.

Robbins filed his combined response and reply on March 3, 2008. In it he argued that he has diligently litigated his case, considering his *pro se* status, and has responded to the best of his ability to Rank's discovery. He characterizes those discovery requests as "enormous and repetitive," and as an attempt by Rank "to bury Robbins and hope to gain a quick and painless resolution," and that Robbins' failure to timely comply was due in part to the "sheer enormity of the task at hand." He further argues that he has a meritorious defense to the charges, and provides several exhibits purporting to support his argument. Finally, Robbins asserts that he has delivered over 500 pages of discovery to Rank in response to its requests.

## ANALYSIS

Federal Rule of Civil Procedure 55(c) states, in relevant part, "For good cause shown the court may set aside an entry of default...." To succeed, a defendant must demonstrate "(1) good cause for their default; (2) quick action to correct it; and (3) a meritorious defense to plaintiff's complaint." Merrill Lynch Mortgage Corp. v. Narayan, 908 F.2d 246, 252 (7th Cir. 1990).

Good Cause

Robbins filed an affidavit with his motion which stated that his absence in court on the date the default was entered was due to his need to attend to some family medical issues. He also stated that due to his *pro se* status, and his family obligations, it had taken him longer than expected to respond to plaintiff's motions and discovery requests. We agree that a family emergency constitutes good cause for Robbins' absence on the date of default, but Robbins does not attempt to justify his other numerous absences in court. Nor do we agree that his *pro se* status permits Robbins to ignore the deadlines set by this court. Since the entry of default,

Robbins has continuously failed to abide by any of the court-imposed deadlines, and failed to respond to discovery or answer the complaint until four months after the entry of default. These negate his claims of good cause. He has made no excuses for this conduct beyond citing his status as a *pro se* defendant. While *pro se* litigants "benefit from various procedural protections not otherwise afforded to the ordinary attorney-represented litigant ... *pro se* litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines." Jones v. Phipps, 39 F.3d 158, 163 (7th Cir. 1994).

Nor can it be said that this court has been less than accommodating to Robbins. We have repeatedly extended deadlines for the filing of his answer and discovery responses – in certain instances *sua sponte* when Robbins was not present in court. In addition, this court has continued the motion for judgment for five months after default was entered, in the hopes that Robbins would bring himself into compliance. Yet it has taken that entire time for Robbins to only partially comply. We agree with Rank that a number of Robbins' responses to discovery are woefully lacking, and his amended answer to the complaint came a full five months after it was due, and three months after his motion to vacate was filed. *See* Merrill Lynch, 908 F.2d at 252 (late filing of Rule 55(c) motion and failure to file answer until motion filed formed adequate basis for the court to refuse to vacate default).

While Robbins may be acting *pro se* he is certainly no stranger to the law. He was a lawyer in California for at least three years, at some point in the 1980s, and according to the California state bar is again an active member as of March 6, 2008. Even though he has not actively practiced in over twenty years and, according to him, has never practiced in federal court, we find that he is more capable than the average lay person of understanding the law, as evidenced by his fairly complete motion, and thus should be well aware of the need for judicial economy and adherence to court deadlines. Robbins makes much of the fact that his

earlier stint in the law was exclusively in state court, and that he is attempting to familiarize himself with the Federal Rules of Civil Procedure for the first time. However, discovery requests and answers to complaints are not concepts unique to the federal system. Finally, it appears that Robbins, by his own admission, is willfully defying this court's deadlines. In his e.mail to Rank's counsel, he stated he felt both morally and ethically compelled to draw out the litigation unless Rank dropped the fraud claim. While we believe even lay people should understand the problems with this statement, Robbins' legal training should certainly have alerted him that such blatantly dilatory tactics are not proper methods of forcing settlement, nor are they "ethical" under any rules of professional conduct of which this court is aware.

His most recent actions notwithstanding, Robbins has failed to demonstrate good cause for his continued failure to adhere to this court's very lenient requirements, and has in fact shown his conduct to be willful and in blatant disregard of this court. Default judgments have been found to be proper "where it appears that the defaulting party has willfully chosen not to conduct its litigation with the degree of diligence and expediency prescribed by the trial court." Jones, 39 F.3d at 164. Therefore, we find that Robbins has failed to demonstrate good cause necessary to set aside the default against him.

Quick Action

Since Robbins has failed the good cause prong, we need go no further in our analysis. For the sake of completeness, however, we will give both brief consideration. Had Robbins demonstrated good cause for his default, we would still find that he failed to satisfy the quick action requirement. Robbins did not file his motion to set aside the default until over a month after the entry of default and filed it only on the day of the prove-up hearing. Jones, 39 F.3d at 165 (default judgment proper when more than a month elapsed from time defendant was made aware of entry of default without response). Moreover, at that time he had done nothing

to rectify his prior discovery deficiencies, nor had he answered the complaint. Robbins does not argue that he was not given notice of the default in a reasonable time, even though he was absent on the date of its entry. Nor does he offer an excuse as to why it took him a month to move for the default to be set aside. We find that Robbins' delayed motion coupled with his lack of a justifiable excuse do not rise to the level of quick action.

<u>Meritorious Defense</u>

Finally, we address Robbins' argument that he possesses a meritorious defense to Rank's claims of breach of contract and fraud. In order to demonstrate a meritorious defense, Robbins must show that his defense possesses "a grounding in facts which would support a meritorious defense of the action by the non-moving party." <u>Pretzel & Stouffer v. Imperial Adjusters, Inc.</u>, 28 F.3d 42, 46 (7th Cir. 1994). This requires "more than a general denial and bare legal conclusions." *Id.*

Robbins argues that he has a meritorious defense against the fraud claim because the safe harbor provision required Rank to conduct due diligence to investigate DDN's and Robbins' claims about the company's viability. However, in our March 2, 2007, order we analyzed that argument and held that the safe harbor provision did not prevent Rank's fraud claim. <u>Deluxe</u>, 2007 U.S. Dist. LEXIS 15618.

Robbins argues that DDN is a Nevada corporation, which shields him from personal liability on the contract claim, and also demonstrates that the misstatement in the contract that DDN was a California corporation is not a material misrepresentation. First, we note that DDN's status as a corporation could not shield Robbins from personal liability on the fraud claim, as we stated in our March 2, 2007, order. As to the latter argument, Robbins provides no evidence that DDN is in fact a Nevada corporation, or any corporation at all. He does not address DDN's corporate status in his answer to the complaint, except to say that it was

mistakenly denoted a California corporation. In his motion to dismiss Rank's first amended complaint, Robbins had identified DDN as an LLC, not a corporation.[2] Interestingly, among the exhibits Robbins provided to this court is a commission agreement between DDN and another entity (not Rank), which lists DDN as a Delaware corporation (Robbins' Response to Rank's Renewed Motion, Dkt. 98, page 47 "Commission Agreement"). Despite the fact that Robbins purported to be the CEO of DDN, he has to this date not provided this court with any documentation of DDN's corporate status – information that would be squarely in his possession. A meritorious defense is one "which is supported by a developed legal and factual basis." Jones, 39 F.3d at 165. No such basis is provided here. Since Robbins fails to demonstrate that DDN is a corporation, he cannot be shielded from the breach of contract claim.

Robbins argues that he did not breach the contract with Rank because the parties had agreed that advertisers would pay Rank directly, and in the absence of advertisers no money was due from DDN to Rank.[3] Robbins also argues that Rank in fact still owes DDN $200,000 on the non-refundable inducement fee for the exclusive rights to manufacture discs. We disagree with both points. According to the documents present before this court, Rank did not owe anything to DDN because DDN failed to order the requisite number of discs to trigger the additional inducement payments under the terms of the contract. In fact, Rank had paid an additional $400,000 more than required, since DDN had not even ordered a sufficient number of discs to trigger that payment. Additionally, while the contract creates a lockbox arrangement where advertisers pay Rank directly, it is clear from the terms of the contract

---

[2] As stated in this court's March 2, 2007, order, there are numerous reasons why DDN's status as an LLC, rather than a corporation, would be material to a contract.

[3] For a more complete recitation of the factual background of this case, see Deluxe Media Servs., LLC v. Direct Disc Network, Inc., 2007 U.S. Dist. LEXIS 15618 (N.D. Ill. 2007).

that the lockbox arrangement was solely for the benefit of Rank as an additional assurance, because of its hefty $1,000,000 inducement payment to DDN. The contract further states that after the lockbox option ends, DDN will pay all charges to Rank. It was up to Rank to determine the length of time the lockbox arrangement remained in place, and thus the fact that it decided not to implement the lockbox arrangement does not relieve DDN from its duty to pay, as stated in the contract, "within thirty (30) days from the postmark date on the invoice." (Preferred Provider Services Agreement ¶¶ 4, 9). The failure to pay fell squarely on DDN, according to the terms of the contract, and in the absence of proof that DDN was a corporation, that responsibility fell on Robbins. Based on the foregoing, and in light of the fact that Robbins has failed to provide this court with more than basic denials and conclusions of law, with no support in fact, we hold that he has not demonstrated a meritorious defense to the claims against him.

## Default Judgment

Default judgments have traditionally been disfavored, considered harsh sanctions only to be imposed as a last resort. However, the Seventh Circuit has noted that it has moved away from that traditional notion, citing the need for a balance of competing interests – a trial on the merits on the one hand, and the need to promote efficient litigation and protect the interests of the parties on the other. In re State Exchange Finance Co., 896 F.2d 1104, 1106 (7th Cir. 1990); C.K.S. Engineers, Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1206 (7th Cir. 1984). Thus, the Seventh Circuit has determined that a default judgment may be used even in the absence of other sanctions, where necessary. Merrill Lynch, 908 F.2d at 252 ("the district court is not required to fire a warning shot"); Hall Commodity Cycles Mgmt Co. v. Kirsch, 825 F.2d 1136, 1139 (7th Cir. 1987). While this court has not imposed any other sanctions against Robbins prior to entry of default, the record demonstrates that Robbins has

been given ample time and opportunity to correct his errors, and has failed, in some instances willfully, to do so. We hold that such conduct is disrespectful not only to opposing counsel and this court, but to the system of justice as a whole. Accordingly, we enter default judgment against defendant Robbins.

## CONCLUSION

For the foregoing reasons, Robbins' motion to set aside the default is denied, and judgment against him and DDN is entered in the amount of $3,007,168.91,[4] as demonstrated by Rank.

/s/ James B. Moran
JAMES B. MORAN
Senior Judge, U. S. District Court

March 19, 2008.

---

[4] While Rank's motion seeks entry of a default judgment against DDN, we note that such a judgment was entered by this court on August 30, 2006 (Dkt. 44). However, no damages determination was made at that time. We enter the measure of damages with this order.